**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-20695**

---

**MEADOWBRIAR HOME FOR CHILDREN, INC.,**

**Plaintiff-Appellant,**

**VERSUS**

**G.B. GUNN, ET AL.,**
**d/b/a CORP,**

**Defendants,**

**DONALD L. SMITH, ET AL.,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

April 11, 1996

Before SMITH, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

## BACKGROUND

Plaintiff Meadowbriar Home for Children ("Meadowbriar") is a non-profit corporation which planned to develop a treatment center for emotionally disturbed women in Harris County, Texas. In August 1989, Meadowbriar acquired four tracts of land in Harris County and began remodeling the two homes located on this land. Meadowbriar intended to use these homes as residences for females "who are emotionally disturbed and [who] need residential care and treatment in a home-like setting." In the same month, Meadowbriar applied to the Texas Department of Human Resources ("TDHR")

for licensing as a medical treatment center. Sometime thereafter, Meadowbriar began to negotiate with Spring Shadows Glen Hospital ("Spring Shadows"), a health care provider, seeking to provide treatment to some Spring Shadows patients.

During this time, certain local residents who were opposed to the treatment center formed a community group called Citizens Organized for Residential Protection ("CORP"). Among the CORP members was Defendant Lucy Hebron, a local citizen.

CORP argued that there are valid deed restrictions on Meadowbriar's newly-purchased land which preclude the building of a treatment center. CORP brought its complaint to the Houston City Attorney's Office, where CORP allegedly discussed its concerns with Assistant City Attorney Edwin T. Grauke.

On November 14, 1989, Grauke allegedly instructed the city's Public Works Department to refrain from issuing Meadowbriar an occupancy permit. On December 5, 1989, Grauke allegedly contacted the city's Fire Marshal to prevent the issuance of a fire permit.

On January 17, 1990, Senior Fire Inspector Donald L. Smith informed Meadowbriar that a fire permit which previously had been issued to Meadowbriar on September 14, 1989, was inadequate and needed to be withdrawn. Because fire inspections are conditions to the issuance of state licenses, the TDHR could not perform its final evaluation. Consequently, Meadowbriar was not awarded the permits which it needed to open its treatment center.

In August 1990, a Harris County, Texas, court determined that the deed restrictions are unenforceable. However, by this time, Spring Shadows had decided that it would not enter into the proposed contractual arrangement with Meadowbriar and negotiations were abandoned.

Meadowbriar accuses the CORP members of disseminating false information in an attempt to delay and frustrate the development of the treatment center. Meadowbriar also accuses Grauke, Smith, and the City of Houston of taking an active role in preventing the opening of the treatment center. Meadowbriar claims that these actions created obstacles to the opening of the center which Meadowbriar argues resulted in the denial of dwellings for the handicapped. Meadowbriar argues

2

that such conduct violates the Fair Housing Act of 1968 and its amendments, as well as the federal Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1983, and 1985. Finally, Meadowbriar argues that the delay caused by Defendants' actions was the reason that Spring Shadows abandoned negotiations, which resulted in a loss of revenue to Meadowbriar. Because the Defendants allegedly acted together, Meadowbriar alleges that their conduct constitutes conspiracy in violation of the Fair Housing Act and the Civil Rights Act.

## PROCEDURAL HISTORY

Meadowbriar brought suit in federal district court in November 1991. Defendant Lucy Hebron was added in June 1992. Over the course of litigation, Meadowbriar filed six amended complaints[1] and the parties jointly filed over 200 motions. On January 28, 1993, the district court dismissed the suits against Defendants Grauke, Smith, and the City of Houston. Following these dismissals, the remaining parties, with the exception of Lucy Hebron, reached settlement. In November 1993, the district court granted Hebron's motion for summary judgment. In August 1994, the district court awarded Hebron approximately $44,163.63 in attorney's fees and costs.[2] Meadowbriar now appeals the district court's dismissal of its suit against Grauke, Smith, and the City of Houston, as well as the summary judgment in favor of Hebron, and the attorneys' fees and costs award.

## DISCUSSION

### I. Appellate Jurisdiction

---

[1]  Pursuant to the district court's order, the Second Amended Complaint controls.

[2]  By order entered on July 18, 1994, the district court originally awarded Hebron $37,751.13 in attorney's fees and costs. However, by order entered on August 19, 1994, the district court revised its award of attorney's fees and costs to $44,163.63.

First, we must address Defendant Hebron's contention that this Court is without appellate jurisdiction.[3] Hebron argues that Meadowbriar's notice of appeal, which was filed on September 15, 1994, is untimely because it was filed more than 30 days after the district court entered its final judgment which, Hebron argues, was entered on November 17, 1993. Meadowbriar disagrees and argues that the district court's final judgment was entered on August 19, 1994, thus making its notice of appeal timely. For the following reasons, we conclude that Plaintiff timely filed its notice of appeal.

Jurisdiction in this case is based upon 28 U.S.C. § 1291, which states, in relevant part: "The courts of appeals...shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291 (1995). Federal Rule of Appellate Procedure 4(a)(1) states, in relevant part, that "the notice of appeal...must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from...." F.R.A.P. 4(a)(1). Federal Rule of Civil Procedure 58 provides, in relevant part, that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."[4] F.R.C.P. 58.

On November 17, 1993, the district clerk entered two orders -- one order entitled "Memorandum," and a second order entitled "Order."[5] The document entitled Memorandum is 20 pages long and makes rulings upon approximately 12 separate motions including Defendant Hebron's motion for summary judgment. At the end of this memorandum, under the sub-heading "Conclusion," the district court states: "The Court, having considered all other contentions presented,

---

[3] Hebron first raised this issue after the appellate briefs had been filed, but before oral argument. We granted the parties an opportunity to address this issue through additional briefing. Because subject matter jurisdiction can be raised at any time, we must address this issue. See Texas General Petroleum Corp. v. Leyh, 52 F.3d 1330 (5th Cir. 1995).

[4] Federal Rule of Civil Procedure 79(a) requires the clerk of the court to keep a "civil docket" book.

[5] To avoid confusion, it is important to note that the district court signed these two orders on November 12, 1993, and November 15, 1993, respectively. However, these orders were not entered by the district clerk until November 17, 1993.

concludes for the reasons set forth above, that the Defendant's motion for summary judgment should be granted, making the remaining pending motions moot." No specific relief is otherwise granted in this memorandum.

The second order entered on November 17, 1993, is a two page document entitled, "Order." In this order, the district court states, in relevant part: "For the reasons stated in the Memorandum of November 12, 1993, the Defendant Lucy Hebron's Motion for Summary Judgment is GRANTED." The order further states that the parties' various motions "are DISMISSED AS MOOT," and the parties are ordered to submit briefs and affidavits in support of attorney's fees. Hebron argues that this second order of November 17, 1993, constitutes the final order or judgment from which Meadowbriar's 30 days to file a notice of appeal ran.

Meadowbriar disagrees and argues that a third order of the district court entitled, "Amended Final Summary Judgment," entered on August 19, 1994, constitutes the final, appealable order or judgment in this case. In relevant part, the district court's Amended Final Summary Judgment order states:

> Defendant's Motion for Summary Judgment having been granted by Order of this Court dated November 12, 1993, the Court
>
> ORDERS that FINAL JUDGMENT for Defendant Lucy Hebron is GRANTED and,
>
> ORDERS that Plaintiff Meadowbriar Home for Children, Inc. take nothing, and that the Defendant Lucy Hebron recover of Plaintiff Meadowbriar Home for Children her costs of action and, additionally, her attorney's fees and expenses in the amount of $44,163.63 pursuant to the Court's Memorandum & Order of July 15, 1994, as corrected by Memorandum & Order of even date.

Meadowbriar argues this order was the district court's final order or judgment and that its 30 days to file a notice of appeal ran from this August 19, 1994, date. We agree.

"A judgment is final when it terminates litigation on the merits and leaves the court with nothing to do except execute the judgment." Zink v. United States, 929 F.2d 1015, 1020 (5th Cir. 1991). However, a judgment is not final until both liability and damages are determined. Deloach v. Delchamps, 897 F.2d 815 (5th Cir. 1990). "Although there is no statute or rule that specifies the

5

essential elements of a final judgment and the Supreme Court has held that no form of words and no peculiar formal act is necessary to evince the rendition of a judgment, a final judgment for money must, at least, determine, or specify the means for determining, the amount of the judgment." Zink, 929 F.2d at 1020 (internal citations omitted). "This Court has held previously that a ruling which grants a motion for summary judgment by itself is not an appealable order." Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd., 650 F.2d 633, 635 (5th Cir. 1981).

In the district court's second order of November 17, 1993, the district court does not make a finding of liability, nor does it award damages. It merely reiterates the rulings from its first order of November 17 and orders the parties to submit briefs on the issue of attorney's fees. Because neither of the November 17, 1993, orders made a finding of liability or specified the amount of judgment, they were not final. Zink, 929 F.2d at 1020. Furthermore, we note that the Rule 58 separate document requirement "should be read, where reasonably possible, to protect the right to appeal." Seiscom Delta, Inc. v. Two Westlake Park, 857 F.2d 279, 282 (5th Cir. 1988). "It must be remembered that the rule is designed to simplify and make certain the matter of appealability. It is not designed as a trap for the inexperienced.... The rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss." Seiscom Delta, Inc., 857 F.2d at 283, citing Bankers Trust Co. v. Mallis, 435 U.S. 381, 386, 98 S. Ct. 1117, 1121, 55 L.Ed.2d 357 (1978) (internal citations omitted). For the foregoing reasons, the August 19, 1994, order was the final judgment from which Meadowbriar timely appealed.


## II.  Standing

Defendants Grauke, Smith, and the City of Houston argue that Meadowbriar lacks standing to bring suit for damages arising from alleged violations of the Fair Housing Act and the Civil Rights Act. We disagree.

The standard for establishing standing is set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d. 351 (1992):

6

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 2136, 119 L.Ed.2d. 351 (1992) (internal citations and quotations omitted) (brackets in original). "Because standing is jurisdictional under Article III..., it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court." 7547 Corporation v. Parker & Parsely Development Partners, 38 F.3d 211, 217 (5th Cir. 1994).

At this pleading stage, Plaintiff's complaint sufficiently alleges a redressable injury-in-fact which is causally connected to the alleged conduct of the Defendants.[6] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are

---

[6] In Plaintiff's Second Amended Complaint, Plaintiff asserts, inter alia, that: 1) Defendant Grauke "contacted the officials at Spring Shadows and based on false representations, induced Spring Shadows to suspend further business relations and not enter the agreed contract with Plaintiff," 2) "Defendants induced Spring Shadows not to execute the contract with Plaintiff by threats of community and/or official sanctions and bad publicity," 3) "Grauke, Smith and City of Houston conspired by concerted action to effectuate the interference with prospective contract that resulted in Plaintiff's injuries and damages," 4) "Defendants' interference...has caused damage to Plaintiff by depriving Plaintiff of revenue that they [sic] otherwise would have received under contract," 5) Defendants Grauke, Smith and City of Houston "for the sole purpose of causing economic injury to Plaintiff and to force Plaintiff from the neighborhood," 6) Defendants' discrimination "under the Federal Fair Housing Law" and "under the Federal Civil Rights Law" caused damage to Plaintiff by depriving Plaintiff of revenue that they [sic] otherwise would have received under the contract plus a loss of good will and other lost revenue that have flowed from the contract...."

necessary to support the claim." Defenders of Wildlife, 112 S. Ct. at 2136. "[W]hen the plaintiff is himself an object of the action (or foregone action) at issue there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." Feld v. Zale Corp., 62 F.3d 746, 751 n.13 (5th Cir. 1995) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 2136, 119 L.Ed.2d. 351 (1992)). Meadowbriar adequately alleges injury, causal connection, and redressability. Nothing more is needed to confer standing upon Meadowbriar at the pleading stage.

### III. *Motion to Dismiss*

Meadowbriar argues that the district court erred in granting Grauke, Smith, and the City of Houston's joint motion to dismiss Meadowbriar's claims against them for violations of the Fair Housing Act, the Civil Rights Act, tortious interference with contract, and conspiracy. For the following reasons, (1) we affirm the district court's dismissal of all claims against Grauke and Smith; (2) we affirm the district court's dismissal of the Civil Rights Act claims, tortious interference with contract claims, and conspiracy claims against the City of Houston; and (3) we reverse the district court's dismissal of the Fair Housing Act claim against the City of Houston.

A motion to dismiss "may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995). We co nstrue all of the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. See LaPorte Construction Co. Bayshore Nat'l Bank, 805 F.2d 1254, 1255 (5th Cir. 1986). "[W]e review de novo the district court's action." Fairley v. Turan-Foley Imports, Inc., 65 F.3d 475, 479 (5th Cir. 1995).

Defendants Grauke and Smith were each sued in their individual and official capacities. As to the suit against them in their individual capacities, the district court determined that Defendants Smith and Grauke were entitled to qualified immunity on Meadowbriar's Fair Housing Act claims because the "contour of the right to Fair Housing for the emotionally disturbed women was not

8

sufficiently clear that the reasonable official would understand that what he [was] doing violated the law." We agree.

"The Fair Housing Act (FHA or Act) prohibits discrimination in housing against inter alios, persons with handicaps." City of Edmonds v. Oxford House, Inc., ___ U.S. ___, 115 S. Ct. 1776, 1778, 131 L.Ed.2d 801 (1995).

> The FHA, as originally enacted in 1968, prohibited discrimination based on race, color, religion, or national origin. Proscription of discrimination based on sex was added in 1974. See Housing and Community Development Act of 1974, § 808(b), 88 Stat. 729. In 1988, Congress extended coverage to persons with handicaps and also prohibited "familial status" discrimination, i.e., discrimination against parents or other custodial persons domiciled with children under the age of 18. 42 U.S.C. § 3602(k).

Id. at 1799 n.1 (internal citations omitted). The stated policy of the Fair Housing Act is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. To this end, § 3604 of the Act states that "it shall be unlawful...[t]o refuse to sell or rent...or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). On ~~or about~~ September 13, 1988, § 3604 was amended to prohibit discrimination based upon a handicap~~, 42~~ by adding § 3604(f)(1), which reads, in relevant part:

> **(f)(1)** To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of -
>
> **(A)** that buyer or renter,
>
> **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> **(C)** any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1).

"In assessing qualified immunity, we engage in a two-step analysis. First, we determine whether a plaintiff has alleged the violation of a clearly established constitutional right under the current state of the law." R.A.M. Al-Ra'id v. Ingle, 69 F.3d 28, 31 (5th Cir. 1995). "Second, if the plaintiff has alleged such a constitutional violation, we decide whether this defendant's conduct was

9

`objectively reasonable,' measured by reference to the law as clearly established at the time of the challenged conduct." Id. at 31 (internal citations omitted). Because "many general constitutional rights...are clearly established and yet so general that it often will be unclear whether particular conduct violates the right..., the right the official is alleged to have violated must have been `clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hodorowski v. Ray, 844 F.2d 1210, 1216-17 (5th Cir. 1988). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...; but it is to say that in light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Fair Housing Act was amended in 1988 to prohibit discrimination in housing against people with handicaps. This amendment became effective on March 12, 1989. The regulation, issued by the Secretary of HUD pursuant to § 3614a, became effective on March 12, 1989. The conduct which gave rise to the instant complaint occurred in December 1989 and January 1990. For the following reasons, it was not clearly established at the time of the challenged conduct that the FHA extended personal liability to the conduct of municipal officials who were not involved in the selling or renting of property, and who did not have decision-making authority. "We start, as we must, with the language of the statute." Bailey v. United States, 116 S. Ct. 501, 506 (1995). Words in a statute must be given their "ordinary or natural" meanings. Id. at 506. We "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme." Id. at 506. The relevant language of § 3604(f)(1) states that it is unlawful "[t]o refuse to *sell or rent* ... or otherwise *make unavailable or deny*, a dwelling to any buyer or renter because of ... a handicap ..." 42 U.S.C. § 3604(f)(1) (emphasis added). Giving an ordinary and natural readingy to the language and context of both the original § 3604 and of § 3604(f)(1), we hold that they proscribe housing discrimination in two contexts: 1) the selling or renting of a dwelling, and 2) the otherwise making

10

unavailable or denying of a dwelling. Because Plaintiff has not alleged that Grauke or Smith were acting individually as sellers or lessors of property, or that as officials of the City of Houston they had anything to do with the selling or leasing of dwellings by the City, the first context is not applicable in this case. We look, therefore, to see if the alleged actions of Grauke and Smith "denied or otherwise made unavailable" to Plaintiff's a dwelling.

Liberally construing the complaint, the alleged conduct of Grauke and Smith does not fall within the "otherwise make unavailable or deny" purview of the Fair Housing Act. Although the "otherwise make unavailable or deny" phrase seems all-encompassing, its scope is not limitless. It is axiomatic that for an official to make a dwelling unavailable, that official must first have the authority and power to do so. In other words, the official must be in a position to directly effectuate the alleged discrimination. Plaintiff's complaint does not allege that Defendants Grauke and Smith had such authority.[7] Additionally, as of 1990, there were no federal cases or regulations holding that the "otherwise make unavailable or deny " language imposed personal liability upon officials who have decision-making authority.[8] At the time § 3604(f)(1) was adopted in 1988, there is some indication in the legislative history that Congress intended the language to apply to a broader set of circumstances than just decisions relating to selling and renting of a dwelling:

> [ § 3604(f)(1)] would also apply to state or local land use and health and safety laws, regulations, practices or decisions which discriminate against individuals with handicaps.....The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices.

H.R. Rep. No. 100-711, 100th Cong., 2nd Sess -- (1988), *reprinted in* U.S.C.C.A.N. 2173, 2184-2185. We hesitate, however, to attribute much weight to this legislative history. The regulations

---

[7] To the extent that Smith's title of "Senior Inspector for the City of Houston," may imply a certain degree of decision-making authority, Plaintiff has neither alleged that Smith has decision-making authority, nor that his actions were conducted with a discriminatory animus.

[8] The Texas Legislature adopted a fair housing law which is substantially similar to the federal Fair Housing Act. Tex. S.B. 75, 71st Leg., R.S. (1989), *codified* at Tex. Prop. Code Ann. Sec. 301.023 (Vernon 1995). The Texas Fair Housing Act became effective on January 1, 1990. Nowhere in the Texas Fair Housing Act is the phrase, "otherwise make unavailable or deny" defined.

11

issued in the Spring of 1989 under the FHA make no mention of its applicability to "state or local land use ... laws" nor to "zoning decisions and practices." Furthermore, the quoted language says nothing at all about whether Congress intended that a city official would have personal liability for any actions taken in connection with "land use ... laws" or "zoning decisions and practices." Additionally, we doubt that a latent or potential application of the FHA to city actions derived from a few phrases of legislative history meets the test of "clearly established law" as of the time of the actions by Grauke and Smith in late 1989 and 1990. Finally, we note that there is nothing in Plaintiffs' second amended petition which alleges that the conduct of Grauke and Smith violated "clearly established" law or "was unreasonable" so as to satisfy the law in this Circuit that claims against public officials in their individual capacities be stated with "factual detail and particularity." Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985); Schutea v. Wood, 47 F.3d 1427 (5th Cir. 1995) (en banc).

For these reasons, we affirm the district court's dismissal of the Fair Housing Act claims against Grauke and Smith on the basis of qualified immunity.

As to the district court's dismissal of Meadowbriar's Fair Housing Act complaint against the City of Houston, Meadowbriar's pleading did sufficiently allege a cause of action for violation of the Fair Housing Act. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). Because the City of Houston is not entitled to the benefit of qualified immunity, Babb v. Dorman, 33 F.3d 472, 475 n.5 (5th Cir. 1994), Meadowbriar need not allege the violation of a clearly established right. Meadowbriar need only make a short and plain statement of its Fair Housing Act claim. Upon a de novo review of the complaint, we find that Meadowbriar's complaint contains such a statement.[9] Accordingly, the

---

[9] In relevant part, Plaintiff's complaint states, inter alia: "This is a case involving discriminatory housing practices directed at a health care provider of services and facilities.... The above-named Defendants engaged in discrimination in violation of the Federal Fair Housing Law, 42 U.S.C. § 3601 et seq...."; "The actions described herein by Defendants constitute illegal discrimination in housing in violation of the provisions of the Fair Housing Law, 42 U.S.C. § 3601 et seq."; "Defendants discrimination under the federal Fair Housing Law has caused damage to Plaintiff by depriving Plaintiff of revenue that they otherwise would have received under the contract plus a loss of good will and other lost revenue that have flowed from the contract...."

12

district court's dismissal of Meadowbriar's Fair Housing Act claim against the City of Houston is reversed and remanded for consideration on the merits.

As to the district court's dismissal of the Civil Rights Act claims against Grauke, Smith, and the City of Houston, we affirm. In its complaint, Meadowbriar generally alleges that the actions of Defendants described in the complaint "constitute illegal discrimination in violation of the provisions of the Federal Civil Rights Law, 42 U.S.C. §§ 1981, 1982, 1983, and 1985." For the following reasons, Meadowbriar's complaint is inadequate as to these claims.

As to Meadowbriar's appeal of the district court's dismissal of its §§ 1981, 1982, and 1985 claims, we refuse to reach the merits of these claims because Meadowbriar has failed to properly address them in the argument section of its appellate brief. Federal Rule of Appellate Procedure 28(a)(6) states:

> (6) An argument. The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to authorities, statutes, and parts of the record relied on. The argument must also include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues.

F.R.A.P. 28(a)(6). Meadowbriar's argument section fails to even mention §§ 1981, 1982, and 1985, let alone offer grounds for appeal, citations to authorities, statutes, and arguments in support. In the absence of logical argumentation or citation to authority, we decline to reach the merits of these claims. Randall v. Chevron U.S.A., Inc., 13 F.3d 888 (5th Cir.), cert. denied, 115 S. Ct. 498 (1994).

As to Meadowbriar's argument that the district court erred in dismissing its § 1983 claims, we affirm the finding of the district court. Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (1994). Municipalities and cities qualify as persons liable to suit under § 1983. See Monell v. Dept. of Social Services of the City of New York, Et. Al., 98 S. Ct. 2018 (1978). If a § 1983 suit is brought against a city, the claim must be based upon the implementation or execution of a policy or custom which was officially adopted by that body's

13

officers.  Krueger v. Reiner, 66 F.3d 75, 76 (5th Cir. 1995).  To support a cl aim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation.  Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987).

Meadowbriar has neither alleged that Defendants Grauke and Smith acted pursuant to an official custom or policy of the City of Houston, nor that the City of Houston implemented such an official custom or policy.  Without an allegation that the City of Houston had an official custom or policy upon which Smith and Grauke acted, § 1983 can provide no relief.  The district court properly dismissed Meadowbriar's § 1983 claims.

Finally, because Meadowbriar failed to address in its appellate brief its claim for conspiracy and tortious interference with contract, for the reasons stated above, we need not address these claims.  See Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 911 (5th Cir. 1994).

## IV.  Lucy Hebron

Meadowbriar argues that the district court erred when it granted summary judgment to Lucy Hebron because Meadowbriar's claims against her were time-barred by the two year statute of limitations.[10]  After reviewing the record, we affirm the finding of the district court.

"This court reviews a district court's granting of summary judgment de novo, applying the same standard as the district court."  Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir. 1995).  "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[10]  Meadowbriar does not dispute that the statute of limitations is two years for civil rights actions brought in the State of Texas under 42 U.S.C. §§ 1981, 1983, 1985, and 1988.  See Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1987).  Nor does Meadowbriar dispute that the statute of limitations for Federal Fair Housing Act actions is also two years.  42 U.S.C. § 3613(a)(1)(A). ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of the alleged discriminatory housing practice....")

of law. F.R.C.P. 56(c)." Wilson v. Secretary, Dept. of Veteran Affairs, 65 F.3d 402, 404 (5th Cir. 1995).

> Under Rule 56(c), the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Norman, 19 F.3d at 1023. The burden on the non-moving party is to do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita, 475 U.S. at 586, 106 S. Ct. at 1355.

Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 588 (5th Cir. 1995).

The district court found that the controlling complaint -- Plaintiff's Second Amended Complaint -- alleges that Defendant Hebron participated in a series of events between November 1, 1989, and May 15, 1990. The district court found that "the earliest date upon which the plaintiff can allege to have initiated its action against Lucy Hebron is May 27, 1992, when [Meadowbriar] filed for leave to amend its complaint to add her as a party."[11] The district court found that this date was 12 days after the two-year statute of limitations had expired. Accordingly, the district judge found that Plaintiff's claims against Hebron were time-barred.

We have reviewed, de novo, the complete record in this case, including the summary judgment evidence offered by both Hebron and Meadowbriar, and we find that the district court did not err. On the issue of limitations, Hebron has offered sufficient evidence and has identified portions of the record which demonstrate the absence of a genuine issue of material fact. As moving party, Hebron met her burden. The burden then shifted to Meadowbriar, the non-moving party, to establish

---

[11] In its order granting summary judgment, the district court notes: "This motion was withdrawn and reurged on June 1. Leave was granted on June 11, and the Complaint was filed that same day."

15

the existence of a genuine issue for trial. After carefully reviewing the record, we find that Meadowbriar has not presented sufficient evidence to raise a genuine fact question concerning the issue of limitations. Meadowbriar's evidence consists of portions of its Third Amended Complaint, which was stricken by the district court, and documents and letters which do not sufficiently implicate Hebron as a participant in any action after May 15, 1990. Mere conjecture and speculation is not enough. Accordingly, the district court's order granting summary judgment to Defendant Hebron is affirmed.[12]

## V. *Attorneys' Fees*

In its Amended Summary Judgment, the district court ordered that "Defendant Lucy Hebron recover of Plaintiff Meadowbriar Home for Children her costs of action and, additionally, her attorney's fees and expenses in the amount of $44,163.63...." Meadowbriar challenges the district court's award.

In its order, the district held, in relevant part:

> Hebron is entitled to attorney's fees as a prevailing party under 42 U.S.C. § 1988(b) of the Civil Rights Act and under 42 U.S.C. § 3612(p) of the Fair Housing Act. Additionally, Hebron is entitled to fee awards under Section 1988 for defending frivolous pendent state law claims that are factually or legally related to frivolous civil rights claims. Hebron is also entitled to attorney's fees because Plaintiff's counsel unreasonably and vexatiously multiplied the proceedings. 28 U.S.C. § 1927 (1988).

(Citations omitted.) Meadowbriar argues that the district court erroneously awarded Hebron attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 3612, and lacked the authority under

---

[12] We note that, in its appellate brief, Meadowbriar argues that the district court abused its discretion by denying Meadowbriar's "emergency" motion to depose Lucy Hebron (presumably, therefore, denying Meadowbriar the opportunity to gather summary judgment evidence). We find Meadowbriar's argument to be without merit. A trial judge's control of discovery is granted great deference and is reviewed under an abuse of discretion standard. See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 436 (5th Cir.), cert. denied, 498 U.S. 895, 111 S. Ct. 244, 112 L.Ed.2d. 203 (1990). Hebron was added as a party in June of 1992. Meadowbriar did not seek to depose her until September 1, 1993. After reviewing the record, we do not find that the district court abused its discretion in denying Meadowbriar's 'emergency' motion.

16

28 U.S.C. § 1927 to assess attorneys' fees against Meadowbriar for Meadowbriar's attorneys' alleged vexatious and unreasonable conduct. As to § 1927, Meadowbriar argues that a fee award can only be imposed against attorneys or others admitted to conduct cases in court.

Section 1988 states, in relevant part, that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title,...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1994). The section, by its terms, authorizes the trial court to order the defendants to pay to the prevailing party reasonable attorneys' fee. Venegas v. Mitchell, 110 S. Ct. 1679, 1682 (1990).

Section 3612 states, in relevant part, that "[i]n any...civil act ion under this section...the court...in its discretion...may allow the prevailing party, other than the United states, a reasonable attorney's fee and costs." 42 U.S.C. § 3612 (1994).

Section 1927 provides that,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Punishment under this statute is sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense." F.D.I.C. v. Calhoun, 34 F.3d 1291, 1297 (5th Cir. 1994) (citations omitted). "We therefore require a detailed finding that the proceedings were both 'unreasonable' and 'vexatious'." Id. at 1297.

"In deciding whether the district court erred...our review is limited to determining whether the court abused its discretion." Esmark Apparel, Inc. v. James, 10 F.3d 1156, 1163 (5th Cir. 1994). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Esmark, 10 F.2d at 1163. The district court is in the best position to assess the propriety of a party's conduct. See Esmark, 10 F.2d at 1164.

17

Based upon our review of the record, we find that the district court sufficiently detailed its findings and we are not persuaded that the district court abused its discretion in awarding attorneys' fees and expenses in the amount of $44,163.63. We do find, however, that the district court erroneously awarded the entirety of all expenses, costs, and attorneys' fees against Plaintiff Meadowbriar. Under § 1927, expenses, costs, and attorneys' fees may only be awarded against attorneys or those admitted to practice before the court. Accordingly, we remand this issue to the district court for apportionment of the awarded expenses, costs, and attorneys' fees.

## CONCLUSION

We AFFIRM the district court's dismissal of Meadowbriar's claims against Edwin T. Grauke and Donald L. Smith based upon qualified immunity. We REVERSE the district court's dismissal of Meadowbriar's claims against the City of Houston for failure to state a claim. We AFFIRM the district court's granting of summary judgment to Lucy Hebron. We AFFIRM the district court's determination that $44,163.63 constitutes reasonable attorneys' fees, costs, and expenses awardable to Lucy Hebron; however, we REVERSE the district court's assessment of this entire amount against Meadowbriar Home for Children, Inc. This case is REMANDED to the district court for apportionment of the expenses, costs, and attorney's fees which are assessable (1) against Meadowbriar Home for Children, Inc. pursuant to § 1988 and § 3612, and (2) against Meadowbriar's counsel pursuant to § 1927, as authorized by the respective statutes. The district court shall enter a Second Amended Final Judgment in accordance with such apportionment. This case is REMANDED to the district court for further proceedings consistent with this opinion.

18