COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

| | | |
|---|---|---|
| THE CITY OF EL PASO, TEXAS, | § | No. 08-11-00262-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 205th Judicial District Court |
| LORENZO MARQUEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC#2006-3154) |
| | § | |

## **O P I N I O N**

Appellant, The City of El Paso (the City) brings this accelerated interlocutory appeal from an order denying its plea to the jurisdiction and an order denying its motion for summary judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (a)(8) (West 2008).

## **FACTUAL AND PROCEDURAL BACKGROUND**

Appellee, Lorenzo Marquez, is a former city employee, who worked in the El Paso Fire Department (EPFD) from March 1982 to May 2007. On September 15, 2005, Appellee filed a dual complaint with the Equal Employment Opportunity Commission (EEOC) and the Civil Rights Division of the Texas Workforce Commission (TWC). On the TWC Charge of Discrimination form, Appellee checked the boxes alleging discrimination based on retaliation and national-origin, as well as the continuing action box indicating that the discrimination was ongoing. Appellee also reported that the earliest date of discrimination took place on April 1, 2004, and the latest date of discrimination was September 14, 2005.

In his charge of discrimination, Appellee stated that on December 14, 2004, he reported to Assistant Fire Chief Manuel Chavira the disparate treatment against himself and his subordinates

by his immediate supervisor and that no action was taken regarding his complaint. On January 11, 2005, Chavira transferred Appellee from his position in the Support Division to a position in the Operations Division. Appellee believed this transfer was made in retaliation for reporting the discriminatory treatment. After his reassignment in 2005, Appellee continued to be discriminated and retaliated against by upper-level management officials.

On May 2, 2006, after conducting an investigation the EEOC dismissed Appellee's complaint because it could not conclude that the information it had obtained established statutory violations and provided Appellee a right-to-sue notice allowing him to file a private suit. On August 2, 2006, Appellee filed suit against the City, alleging violations under Chapter 21 of the Texas Labor Code.[1] Prior to filing suit, Appellee had requested a right-to-sue notice from the TWC which he received on August 4, 2006.

In an amended petition filed on April 7, 2011, Appellee added discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964[2] and Section 1981 of Title 42 of the United States Code.[3] In his live petition, Appellee alleged that he was forced to resign in May 2007 because he was subjected to a hostile and intolerable work environment and, as such, was constructively discharged.

In response to the original petition, the City filed a general denial and a plea to the jurisdiction which also included a traditional motion for summary judgment, a no-evidence motion for summary judgment and a motion to dismiss. Later, the City filed a supplemental plea to the jurisdiction and motion for summary judgment addressing the federal claims added in Appellee's

---

[1] TEX. LAB. CODE ANN. §§ 21.001-556 (West 2006).

[2] 42 U.S.C. § 2000e *et seq.*

[3] 42 U.S.C. § 1981.

2

second amended petition. Appellee filed a response to the City's plea and motion for summary judgment and attached an affidavit stating that on December 14, 2004, he informed Assistant Fire Chief Chavira about the heightened standards he was subjected to compared to Anglo employees. After his involuntary transfer in January 2005, Appellee asserts that he was replaced by an Anglo who did not have all the certifications required for the position and did not have the same certifications as Appellee. Furthermore, Appellee states that white employees who were not qualified or who were less qualified than he is were allowed to work and advance within the Fire Marshal Division. From January 11, 2005 to September 14, 2005, Appellee also states that he was subjected to ongoing ridicule, humiliation, defamation of character, and hostility. Additionally, on September 14, 2005, he learned that false and degrading statements continued to be made against him by EPFD managers.

The trial court denied the City's plea to the jurisdiction and motion for summary judgment. This interlocutory appeal followed.

**DISCUSSION**

The City raises three issues for our review, asserting that the trial court erred in denying both its plea to the jurisdiction and motion for summary judgment. In Issue One, Appellant argues that the trial court erred when it denied its plea to the jurisdiction and motion for summary judgment because Appellee failed to exhaust his administrative remedies by not complying with EPFD's grievance procedure. In Issue Two, the City argues that the trial court erred by denying its plea to the jurisdiction and motion for summary judgment because Appellee failed to preserve his Chapter 21 claims by failing to timely file his administrative complaint. In Issue Three, Appellant contends the trial court lacks subject-matter jurisdiction over Appellant's Section 1981

3

claim. Because Appellee incorporates the same arguments it raised in its plea to the jurisdiction within its motion for summary judgment, our analysis of the City's complaints regarding the trial court's denials of its plea to the jurisdiction and its motion for summary judgment is the same.

*Standard of Review*

A plea to the jurisdiction contests a trial court's subject-matter jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Samaniego v. Keller*, 319 S.W.3d 825, 828 (Tex. App. – El Paso 2010, no pet.). We review *de novo* whether a trial court has subject-matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Keller*, 319 S.W.3d at 828. A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c).

A plaintiff has the burden of pleading facts which affirmatively show that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Thus, we first consider the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists. *State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007), *citing Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Miranda*, 133 S.W.3d at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to replead. *Holland*, 221 S.W.3d at 643; *Miranda*, 133 S.W.3d at 226-27. However, in some instances, a plea to the jurisdiction may require our consideration of evidence pertaining to

4

jurisdictional facts. *Holland*, 221 S.W.3d at 643; *Miranda*, 133 S.W.3d at 227; *Bland Independent School District*, 34 S.W.3d at 555. "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Holland*, 221 S.W.3d at 643, *citing Miranda*, 133 S.W.3d at 227-28.

## Exhaustion of Administrative Remedies

## Grievance Procedure

In Issue One, the City urges that the trial court erred in denying its plea to the jurisdiction and motion for summary because Appellee failed to exhaust his administrative remedies by not participating in any step of EPFD's grievance procedure, and thereby deprived the trial court of subject-matter jurisdiction over Appellee's state and federal law claims. In support of its plea and motion for summary judgment, the City attached, in part, as evidence: (1) the September 15, 2005 TWC charge of discrimination; (2) the EEOC's September 26, 2005 notice of charge of discrimination addressed to the City; (3) the EEOC's May 2, 2006 dismissal and notice of rights; (4) the TWC's notice of right to file a civil action dated August 4, 2006; (5) excerpts of Appellee's deposition; (6) the 2002-2005 Articles of Agreement between the City and Local 51, International Association of Firefighters; and (7) a contract extension signed in October 2006.

Citing to four cases, the City contends that under the terms of the Articles of Agreement, Appellee was required to exhaust EPFD's grievance procedure and because he failed to do so, Appellee is not entitled to seek redress in court. We disagree.

The cases relied upon by the City are inapposite as they do not relate to the state or federal

5

claims at issue in the instant case.[4]   We note that the Articles of Agreement do not contain any mandatory language indicating that Appellee was required to follow EPFD's grievance procedure but, rather, provides that any employee covered by the agreement "may file a grievance . . . ." Furthermore, the City does not cite to any authority, nor are we aware of any, indicating that either Chapter 21 or Title VII of the Civil Rights Act of 1964 mandate that a complainant must exhaust the grievance procedure of his or her employer in addition to the statutory requirements.   TEX. LAB. CODE ANN. § 21.001-556 (West 2006); 42 U.S.C. § 2000e *et seq*.

Chapter 21 of the Labor Code, which is also known as the Commission on Human Rights Act (TCHRA), deals with employment discrimination.[5]   TEX. LAB. CODE ANN. § 21.001-556 (West 2006).   The stated purposes of Chapter 21 include providing "for the execution of the policies of Title VII" and identifying and creating "an authority," i.e., the TWC, to effectuate those policies.   *Id*. § 21.001(1)(2).   Under Chapter 21, it is unlawful for an employer to discriminate against an employee because of race, color, disability, religion, sex, national origin, or age.   *Id*. at § 21.051.   It is also unlawful for an employer to retaliate or discriminate against an employee who opposes a discriminatory practice or files a charge of discrimination.   *Id*. at § 21.055.   It is well settled that before suing under Chapter 21, the complainant must exhaust his administrative remedies.   *See Hoffmann–La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 446 (Tex. 2004); *El Paso County v. Navarrete*, 194 S.W.3d 677, 683 (Tex. App. – El Paso 2006, pet. denied); *see also Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 487 (Tex. 1991) (generally, the exhaustion of

---

[4] *See Lindsey v. General Dynamics Corp.*, 450 S.W.2d 895, 895 (Tex. Civ. App. – Waco 1970, no writ) (action to recover lost wages from three-day lay off); *Kelley v. Southern Pacific Co.*, 429 S.W.2d 583 (Tex. Civ. App. – El Paso 1968, no writ) (wrongful discharge case); *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850 (Tex. App. – Fort Worth 2009, pet. denied) (breach of contract) ; *Rep. Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed. 2d 580 (1965) (suit for severance pay).

[5] The TCHRA has been replaced with the civil rights division of the TWC.   *See* TEX. LAB. CODE ANN. § 21.0015.

remedies is a prerequisite to bringing a civil action under Title VII or the TCHRA).

The failure to exhaust the administrative remedies is a jurisdictional defect which deprives the courts of subject-matter jurisdiction. *Id.* at 488; *Lopez,* 259 S.W.3d at 149. The exhaustion of administrative remedies under Chapter 21 begins with the filing of a charge of discrimination with the TWC. *See* TEX. LAB. CODE ANN. § 21.201 (West 2006); *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 (Tex. 2010). To comply with the exhaustion of administrative remedies doctrine under Chapter 21 of the Texas Labor Code a plaintiff must: (1) file a complaint with the TWC within 180 days of the alleged discriminatory practice; (2) permit TWC to dismiss the complaint or resolve it within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. TEX. LAB. CODE ANN. §§ 21.201-202, 208, 256; *Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App. – Waco 2004, pet. denied). The plaintiff's administrative remedies are exhausted by his or her entitlement to a right-to-sue letter and which simultaneously ends the exclusive jurisdiction of the TWC. *Rice*, 131 S.W.3d at 513; *City of Houston v. Fletcher*, 63 S.W.3d 920, 923 (Tex. App. – Houston [14th Dist.] 2002, no pet.); TEX. LAB. CODE ANN. §§ 21.208, 252 (West 2006).

Under Title VII, in order for a plaintiff to bring a civil action, the exhaustion of administrative remedies is a two-step process: (1) a charge must be timely filed with the EEOC; and (2) a suit must be brought within ninety days of receiving the EEOC's right-to-sue letter. 42 U.S.C. §§ 2000e–5(e)(1), e-5(f)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Moreover, "aggrieved employees may seek relief under Title VII without first invoking or exhausting available alternative legal or contractual remedies." *Rios*

7

*v. Reynolds Metals Co.*, 467 F.2d 54, 57 (5th Cir. 1972); *Hutchings v. U.S. Indus., Inc.*, 428 F.2d 303, 309 (5th Cir. 1970).

Accordingly, there is nothing in Chapter 21 or Title VII that required Appellee to exhaust EPFD's grievance procedures prior to filing suit under either Chapter 21 of the Texas Labor Code or Title VII.   TEX. LAB. CODE ANN. § 21.001-556 (West 2006); 42 U.S.C. § 2000e.   Because Appellee was not required to exhaust EPFD's grievance procedures prior to filing suit, we find that the trial court did not err in denying the City's plea to the jurisdiction based on Appellee's failure to exhaust administrative remedies as to his Chapter 21 and Title VII claims.   *See id*.   Issue One is overruled.

### Timeliness of the Filing of the Administrative Complaint

In Issue Two, the City argues that the trial court erred by denying its plea to the jurisdiction and motion for summary judgment because Appellee failed to timely file his administrative complaint within 180-days of the alleged unlawful employment practice as required by statute and thereby deprived the trial court of subject-matter jurisdiction, and failed to preserve his Chapter 21 claims for judicial review.[6]   Appellee counters that his complaint was timely filed because the City's actions constituted a continuing violation until he was forced to resign due to the alleged hostile work environment.

An administrative complaint must be filed no later than the 180th day after the date the alleged unlawful employment action took place.   TEX. LAB. CODE ANN. § 21.202(a) (West 2006); *Santi v. University of Texas Health Science Center at Houston*, 312 S.W.3d 800, 804 (Tex. App. – Houston [1st Dist.] 2009, no pet.).   The 180-day statutory deadline is a mandatory and

---

[6] The City does not challenge the timeliness of the filing of the administrative complaint concerning his Title VII claims.

8

jurisdictional prerequisite to filing suit. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Comptroller v. Landsfeld*, 352 S.W.3d 171, 178 (Tex. App. – Fort Worth 2011, pet. denied); *Tex. Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 459 (Tex. App. – Austin 2004, pet. denied). The 180-day deadline begins to run "when the employee is informed of the allegedly discriminatory employment decision . . . ." *DeMoranville*, 933 S.W.2d at 493 (*citing Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 66 L.Ed.2d 431 (1980));[7] *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App. – Austin 2009, no pet.).

The City asserts that the relevant date that, in fairness and logic, should have alerted Appellee to act to protect his rights was December 14, 2004, when Appellee initially complained to his supervisors about the alleged discrimination. In the alternative, the City maintains that the last possible date the 180-day statutory clock could have begun to run is January 11, 2005, when Appellee was involuntarily transferred from his position in the El Paso Fire Marshal's Office. Because Appellee did not file his complaint until September 15, 2005, the City argues that under either of these two dates, Appellee's complaint was filed well beyond the 180-day statutory deadline. We disagree.

Failure to comply with the statutory 180-day deadline is a failure to exhaust administrative remedies that deprives the trial court of subject-matter jurisdiction. *See Lopez*, 259 S.W.3d at 154; *Schroeder*, 813 S.W.2d at 488; *Balli v. El Paso Independent School District*, 225 S.W.3d 260, 265 (Tex. App. – El Paso 2006, pet. granted, jmt. vacated). However, an exception to the 180-day statutory requirement is found within the continuing violation doctrine. *Santi*, 312 S.W.3d at 804. The doctrine applies when an unlawful employment practice manifests itself over a period of time,

---

[7] When interpreting Chapter 21 of the Texas Labor Code, courts may look to federal precedent to interpret it because it effectuates federal anti-discrimination legislation. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475-76 (Tex. 2001); *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 908 (Tex. App. – El Paso 2001, pet. denied).

rather than as a series of discrete acts. *Wal-Mart Stores Inc. v. Davis*, 979 S.W.2d 30, 41-42 (Tex. App. – Austin 1998, pet. denied). In *Davis*, the court held that in some cases "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Id*. at 42. Under the continuing violation doctrine a plaintiff is relieved from proving that the entire discriminatory practice occurred within the actionable time period, if he can show a series of related acts, one or more which fall within the 180-day statutory deadline. *Id*. at 41-42. When a continuing violation of discrimination occurs, the 180-day statutory clock for filing does not start to run until one of the involved discriminatory events should, in fairness and logic, have put the average layperson on alert to act to protect his or her rights. *Poindexter*, 306 S.W.3d at 808.

Here, Appellee's September 15, 2005 charge of discrimination indicates that the discrimination against him was an ongoing action, with the earliest date of discrimination beginning on April 1, 2004 and the latest date being September 14, 2005. On January 11, 2005, almost a month after Appellee first complained of discriminatory treatment to Assistant Fire Chief Chavira, Appellee was involuntarily transferred to a different position in a different unit. However, Appellee's transfer did not stop the discrimination he was subjected to by upper level management. Appellee was allegedly subjected to ongoing ridicule, humiliation, defamation of character, and hostility at work. Additionally, as of September 14, 2005, false and degrading statements purportedly continued to be made against Appellee by EPFD managers. Ultimately, Appellee asserts that he was compelled to resign from his employment due to the hostile and intolerable work environment.

As noted above, Appellee's charge of discrimination implicates a hostile work

environment.  A hostile environment claim is a continuing violation.  *Santi*, 312 S.W.3d at 805. Accordingly, Appellee's allegations fall within the continuing violation doctrine and the doctrine is applicable in the instant case because the discriminatory acts against Appellee manifested themselves over time rather than occurring as a series of discrete events.  *Id*. at 804-05.  Because one of Appellee's allegations of discrimination occurred during the 180-day statutory period, the trial court was able to consider all of his allegations even if some of the acts occurred outside of the 180-day deadline.  *See Davis*, 979 S.W.2d at 41-42.  Therefore, we conclude that Appellee's complaint was timely filed.  And as such, the trial court did not err in denying the City's plea to the jurisdiction as to his Chapter 21 claims.  Issue Two is overruled.

### Subject-Matter Jurisdiction over 42 U.S.C. § 1981 Claims

In Issue Three, for the first time, the City asserts that the trial court lacks subject-matter jurisdiction to consider Appellee's claim under Section 1981 of Title 42 of the United States Code and accordingly, seeks dismissal of the claim.  42 U.S.C. § 1981.  Specifically, the City contends that the trial court lacks subject-matter jurisdiction because local governmental entities are not subject to liability under Section 1981 and such a claim can only be pursued through Section 1983. The City maintains that the record does not support a finding that Appellee can amend his pleadings to present valid Section 1983 claims.  In response, Appellee urges that his Section 1981 claims are timely and well-pled and that the "fair notice" pleading rule implicitly recognizes his claims under Section 1983.

*Standard of Review and Applicable Law*

Subject-matter jurisdiction is essential for a court to have authority to decide a case.  *Tex. Ass'n of Bus.*, 852 S.W.2d at 443.  Subject-matter jurisdiction may be raised for the first time on

appeal. *Id*. at 445. Because subject-matter jurisdiction is a question of law, our review is *de novo*. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). If the trial court lacked jurisdiction, then an appellate court only has jurisdiction to set the judgment aside and dismiss the cause. *Dallas County Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App. – Dallas 1994, writ denied).

The standard of review for reviewing subject-matter jurisdiction requires the pleader to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Dallas County Appraisal Dist.*, 887 S.W.2d at 469; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. On review, we construe the petition in favor of the pleader, and if necessary, we review the entire record to determine if any evidence supports jurisdiction. *Dallas County Appraisal Dist.*, 887 S.W.2d at 469; *Tellez v. City of Socorro*, 164 S.W.3d 823, 828 (Tex. App. – El Paso 2005), *rev'd*, 226 S.W.3d 413 (Tex. 2007). If the petition fails to allege jurisdictional facts, the plaintiff's suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

Under Section 1981 "[a]ll persons . . . have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). As the City points out, the Supreme Court has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Although Section 1981 was amended by Congress after *Jett*, the Fifth Circuit has held that the exclusive remedy against state actors for Section 1981 violations continues to be Section 1983. *See Crawford v. City of Houston, Tex.,* 260 F. App'x 650, 652 (5th

12

Cir. 2007); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463-64 (5th Cir. 2001). This requirement "is not a mere pleading formality." *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002). In pleading so, a party "cannot proceed under a theory of respondeat superior and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983." *Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001). To establish a Section 1983 violation, a plaintiff must show that: (1) a policy or custom existed; (2) the governmental policymakers actually or constructively knew of the policy's existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996).

*Application*

Here, Appellee did not assert a claim under Section 1983 against the City, but rather only raised a Section 1981 claim in his second amended petition. 42 U.S.C. § 1983. Because claims alleging Section 1981 violations against state actors must be brought under Section 1983, we conclude that the trial court lacks subject-matter jurisdiction over Appellee's Section 1981 claims. *Williams-Boldware v. Denton County*, 2010 WL 2991164, at *5 (E.D. Tex. 2010) (holding that in the Fifth Circuit, state actors must be sued through Section 1983 for Section 1981 violations). Appellee urges that he is entitled to amend his pleadings to cure the defect. Based on our review of the record, we conclude that it is impossible for Appellee to amend the pleading in a manner that would support a valid Section 1983 claim as nothing in the record indicates that a policy or custom existed, that governmental policymakers had actual or constructive knowledge of the policy's existence, or that a policy or custom were the moving force behind the violation of Appellee's constitutional rights. *Miranda*, 133 S.W.3d at 226-27; *Meadowbriar*, 81 F.3d at 532-33.

13

Consequently, because we have found that the trial court lacked jurisdiction over Appellee's Section 1981 claims, the proper practice is for the reviewing court to set the judgment aside and dismiss the cause. *Dallas County Appraisal Dist.*, 887 S.W.2d at 469. Therefore, we dismiss Appellee's Section 1981 claim for lack of subject-matter jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Issue Three is sustained.

## CONCLUSION

Having overruled the City's first two issues, we affirm the trial court's orders as they pertain to Appellee's Chapter 21 and Title VII claims. Having sustained the City's third issue, we dismiss Appellee's Section 1981 claim for lack of subject-matter jurisdiction.


GUADALUPE RIVERA, Justice

September 25, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

14