IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 94-60486
_____


ADISA R.A.M. AL-RA'ID, a/k/a
Thomas E. Jones,

Plaintiff-Appellant,

v.

THOMAS J. INGLE, JR., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

November 7, 1995

Before SMITH, WIENER, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Adisa Al-Ra'id appeals a summary judgment for the defendants in his 42 U.S.C. § 1983 action involving a confiscation of his religious materials.  We affirm.


I.

Al-Ra'id, a Muslim prisoner in the Texas Department of Criminal Justice ("TDCJ"), filed a complaint in state court against unit chaplain Thomas J. Ingle, Jr., and Islamic chaplain Eugene Farooq. Al-Ra'id alleged that on May 9, 1993, the defendants confiscated

some of his Islamic religious materials, depriving him of his right freely to practice his religion because of his race and religious beliefs.

According to Al-Ra'id, on May 9 he went to Ingle's office to request photocopies of certain Islamic materials. Ingle was busy and stated that Al-Ra'id could leave the originals in his office for Ingle to review and copy later. Al-Ra'id contends, however, that Ingle later reacted in the following manner:

> Defendant Ingle notified the Appellant that he had read said literature, and due to the fact that he (Defendant Ingle) was a christian, he found the literature personally degrading, insulting and repulsive, in addition to expressing numerous other derogatory superlatives in regards to the literature the Appellant had given Defendant Ingle for photocopying.

The materials were not returned to Al-Ra'id.

Al-Ra'id filed a supplemental complaint in which he alleged that the defendants had conspired to retaliate against him for filing his lawsuit in violation of his right of access to the courts.[1] In particular, Al-Ra'id argued that the violations occurred when defendants prohibited him from speaking, teaching, and having a voice in the prison Islamic community.

The defendants removed the action to federal court, then filed a motion to dismiss or for summary judgment, asserting, inter alia, qualified immunity. The district court granted summary judgment on qualified immunity grounds.

---

[1] The defendants were sued only in their individual capacity. Because there are no allegations against the defendants in their official capacity, it is unnecessary to address any Eleventh Amendment concerns.

## II.

We review summary judgment de novo, "reviewing the record under the same standards which guided the district court." Gulf States Ins. Co. v. Alamo Carriage Serv., 22 F.3d 88, 90 (5th Cir. 1994) (internal quotations omitted). Summary judgment is proper "when no genuine issue of material fact exists that would necessitate a trial." Id. In determining whether summary judgment was proper, we view all factual questions in the light most favorable to the non-movant. See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994).

In assessing qualified immunity, we engage in a two-step analysis. First, we determine whether a plaintiff has alleged the violation of a clearly established constitutional right under the current state of the law. See Rankin v. Klevenhagen, 5 F.3d 103, 105-08 (5th Cir. 1993). Second, if the plaintiff has alleged such a constitutional violation, we decide whether his defendant's conduct was "objectively reasonable," measured by reference to the law as clearly established at the time of the challenged conduct. See Harper v. Harris County, Tex., 21 F.3d 597, 601 (5th Cir. 1994); Rankin, 5 F.3d at 108.

## III.

### A.

In the district court, Al-Ra'id claimed that the defendants retaliated against him for initiating this civil action, in violation of his right of access to the courts. Al-Ra'id appears to

3

have waived or abandoned this issue on appeal, however, as he does not brief it.

An appellant's brief must contain an argument on the issues that are raised, in order that we, as a reviewing court, may know what action of the district court is being complained of. See FED. R. APP. P. 28(a)(6). There is no exemption for pro se litigants, though we construe their briefs liberally.

In the section of his brief discussing Eleventh Amendment immunity, Al-Ra'id makes one passing reference to "the retaliatory acts taken by Defendant Farooq against the Appellant after Appellant initiated this civil action." Later in the same Eleventh Amendment immunity section, he again refers to the alleged "retaliati[on] against the Appellant for petitioning the government for the redress of grievances and utilizing his right to access to courts." No other mention is made of the retaliation claim, nor does Al-Ra'id make any effort to inform us of what alleged error the district court made in disposing of this issue. Accordingly, we have nothing to review or rule upon; the issue is abandoned.

B.

Al-Ra'id argues that the chaplains "totally disregarded" the established prison rules and regulations for confiscating personal property, in violation of his due process rights. In Martin v. Dallas County, Tex., 822 F.2d 553, 554-55 (5th Cir. 1987), the plaintiff filed a § 1983 action alleging that he was held in jail for 3½ weeks longer than his DWI sentence. He complained that his

4

wrongful incarceration constituted a deprivation of liberty without due process of law. We held as follows:

> Whether such deprivation came about intentionally or negligently, both of which allegations are found in the complaint, this aspect of the case falls within the ambit of Parratt v. Taylor and Hudson v. Palmer. Parratt and Hudson hold that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct.

Id. at 555 (citations omitted). We concluded that no constitutional claim could be asserted, as adequate post-deprivation remedies were available:

> Texas law afforded Martin remedies against his illegal detention both while it was underway and for post-deprivation compensatory relief. Martin could have sought habeas corpus relief pursuant to Tex. Crim. Proc. Code Ann. art. 11.01 or tort recovery for false imprisonment.

Id.

Similarly, Al-Ra'id's procedural due process claim[2] cannot be asserted, because adequate post-deprivation remedies are available through the prison grievance procedure. The state points out that there is a three-step grievance procedure available throughout the TDCJ, and even Al-Ra'id admits that he "has appealed to the unit warden via the inmate grievance procedure . . . ."

In fact, in Al-Ra'id's brief on appeal, he states that "[i]t must be kept in mind that, Appellant's claim is not that [the TDCJ]

---

[2] As we stated in Martin, the "[v]iolation of a substantive, as opposed to a procedural, due process constitutional right does not fall within the limitations of Parratt/Hudson." 822 F.2d at 555.

5

does not provide an adequate remedy or process in regards to censorship of religious material, Appellant's complaint is that the Defendants in this action circumvented the process due to the Appellant . . . ." Because Al-Ra'id has an adequate post-deprivation remedy and does not allege that the prison "censorship" procedures themselves are invalid, summary judgment was properly granted on his procedural due process claim. See also Sandin v. Conner, 115 S. Ct. 2293 (1995).

C.

Al-Ra'id asserts that the confiscation of his legal materials by Ingle and Farooq was motivated by racial discrimination. According to Al-Ra'id, he was treated differently from other prisoners by the chaplains because he is black. Al-Ra'id presents no evidence to go beyond these generalized assertions, however, and such conclusory allegations of malice are insufficient to maintain his claim. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

D.

Al-Ra'id contends that the seizure of his religious materials was an improper infringement on his freedom to practice his religion. As mentioned, Al-Ra'id asserts that the confiscation was prompted because of his Shiite Muslim religion, and he recounts that Ingle told him that, as a Christian, Ingle found the literature "degrading, insulting and repulsive."

Al-Ra'id's allegations were verified under penalty of perjury;

6

thus, they are deemed competent summary judgment evidence. <u>See</u> <u>Nissho-Iwai Am. Corp. v. Kline</u>, 845 F.2d 1300, 1306-07 (5th Cir. 1988). In contrast, the state asserts that the confiscation occurred "strictly out of concern for inmate security." The state contends that "[d]efendants reasonably believed that the divisive nature of Plaintiff's literature [which characterized Christians as Satanists] may incite hostility and violence between religious inmate groups."

The district court held that the defendants were entitled to qualified immunity, noting that

> [a]t the time the action was taken, the development of the law with regard to the free exercise of religion by prisoners was not at the stage where this Court must conclude that the Defendant officials who confiscated Plaintiff's religious material and denied Plaintiff his attempts to lead the Wednesday night Muslim study class . . . moved beyond the immunity to which they were entitled.

We agree. Even in prison, the right to practice one's religious beliefs is constitutionally protected. <u>See, e.g.</u>, <u>Muhammad v. Lynaugh</u>, 966 F.2d 901, 902 (5th Cir. 1992).

Al-Ra'id, however, has not carried his burden of defeating defendants' qualified immunity defense. <u>See</u> <u>Bennett v. City of Grand Prairie</u>, 883 F.2d 400, 408 (5th Cir. 1989). Bare allegations of malice do not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. <u>Harlow</u>, 457 U.S. at 817-18 (1982).

And yet, Al-Ra'id has offered little more. His assertion that Ingle stated he found the materials to be personally degrading, insulting, and repulsive to him as a Christian))even if

7

proved))would not undermine defendants' qualified immunity claim. Their interest in preventing the dissemination of the literature was bottomed on its highly inflammatory and divisive character.

Ingle presented summary judgment evidence that he decided to pass on the material to Farooq for inspection specifically because it promoted violence and denounced Christianity as Satanism. Ingle properly considered his own reactions to this intensely provocative literature in evaluating what kind of effect it might have on the inmates.

Moreover, the defendants' actions were not violative of clearly established law. TDCJID Administrative Directive AD-7.30 specifies in its statement of policy that "no one shall disparage the religious beliefs of any inmate, or other person . . . ." If Ingle had assisted Al-Ra'id with the copying of the materials denouncing Christians as Satanists, he would have been helping him violate this regulation.

## E.

Al-Ra'id filed motions for leave to file a second supplemental complaint and a third supplemental complaint. The magistrate judge granted the motions. The district court struck this order and denied Al-Ra'id's motions to file his supplemental complaints. The court stated that the supplemental complaints allege "additional causes of action against additional defendants," and it noted that Al-Ra'id could refile the complaints as new actions if he so desired.

8

The decision to grant or deny a motion to amend is entrusted to the sound discretion of the district court. <u>Norman v. Apache Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994); <u>Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.</u>, 933 F.2d 314, 320 (5th Cir. 1991). On appeal, Al-Ra'id argues that the district court erred, but he provides no support for this assertion other than stating that because the district court erred in granting summary judgment, it also erred in striking the order.

Al-Ra'id has cited no caselaw or factual support to bolster his contention, and he has effectively abandoned his claim by failing to brief it. <u>See, e.g.</u>, <u>Brinkmann v. Abner</u>, 813 F.2d 744, 748 (5th Cir. 1987). Moreover, we fail to see any prejudice suffered by Al-Ra'id, and we therefore find no error.

AFFIRMED.

WIENER, Circuit Judge, concurring in part and dissenting in part.

I concur in the panel majority's opinion and judgment to the extent that it affirms the district court's dismissal of Al-Raid's claims against the prison chaplains for allegedly disregarding established prison rules (section III.B.), racial discrimination (III.C.), and infringement on the free exercise of his religion (III.D.), as well as our rejection of Al-Ra'id's allegation that the district court erred in refusing to grant his motion to amend his complaint to add new causes of action and new defendants. I dissent, however, from the panel majority's affirmance of the district court's dismissal of Al-Ra'id's claim that the defendants acted against him in retaliation for his attempt to assert his Constitutional right of access to the courts (section III.A.).

Al-Ra'id is a prisoner in the Texas state system, proceeding pro se and in forma pauperis (IFP). That we construe the pleadings of such parties liberally is so well established that no citation is required. Despite such liberality, however, the panel majority concludes that Al-Ra'id's briefing is so deficient that it constitutes abandonment of the retaliation issue on appeal. I am frankly at a loss to see how that conclusion can be justified.

First, Al-Ra'id filed a notice of appeal to the order of the district court granting summary judgment and dismissing all of his claims. One of these claims was grounded in retaliation for exercising his Constitutional right of access to the courts. In demonstrating to this court that he wished to pursue that claimSQat

10

least implicitly demonstrating his belief that the district court had erred in such dismissalSQAl-Ra'id stated in his brief both facts and law implicating the claim:

> Appellant sues for the continuing deprivation of his Islamic literature without <u>due process</u>, . . . and the <u>retaliatory</u> acts taken by Defendant Farooq against the Appellant <u>after Appellant initiated this civil action</u>. (emphasis added).

Two pages later in his brief, Al-Ra'id stated:

> Defendant Farooq's involvement in . . . <u>retaliating against the Appellant for</u> petitioning the government for the redress of grievances and <u>utilizing his right to access to the courts</u>. (emphasis added).

Elsewhere in his brief Al-Ra'id details the acts of alleged retaliation, implicating the confiscation of his Islamic religious materials. The majority opinion is correct in noting that Al-Ra'id's legal and factual allegations concerning retaliation appear in the part of his brief discussing <u>Eleventh Amendment</u> immunity while, ideally, it should have been in the part discussing <u>qualified</u> immunity. But if that type of "wrong pew" organizing of a brief by a pro se IFP prisoner is not the kind of imperfection that is excused by liberal construction, it is hard for me to envision either the justice in or utility of the rule.

It is true that Al-Ra'id did not cite case law, did not utter magic words about the district court committing reversible error, and did not file with us a brief that is a paragon of clarity and legal syntax. Yet the purpose of our briefing requirements is clearly met: Neither this court nor the defendants can legitimately turn a blind eye to the above-quoted statements from

11

Al-Ra'id's brief, for they obviously serve the briefing rule's _purpose_ of alerting us and the defendants to the legal and factual bases of Al-Ra'id's appeal from the district court's dismissal of his retaliation claim. Even if Al-Ra'id is confused or does not know the difference between qualified immunity and Eleventh Amendment immunity, we and counsel for the Defendants certainly do. And, like our liberal construction rule, the cause of action in retaliation for accessing the courts is so well and long established as to need no citation.[3]

In all candor, I would not "bet the farm" on Al-Ra'id's likelihood of obtaining a judgment based on retaliation, were we to allow his claim to be tried. Neither do I ignore the burden placed on the courts, law enforcement, prison administration, and government in general, that is caused by the burgeoning "recreational" litigation instigated by persons incarcerated. But the resolution of this problem, if there is one, must result from the development of a comprehensive, principled plan, not from sweeping claims under the legal carpet on an ad hoc basis.

As I would reverse the district court's dismissal of Al-Ra'id's claim of retaliation, I respectfully dissent, but only on that issue. In all other respects I concur.

---

3  See, e.g., Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).