No. 07–4589.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 28, 2009.

Opinion Filed: Nov. 4, 2009.

Nicholas FERA, Jr., Appellant

v.

BALDWIN BOROUGH, a municipality; John Conley, member of Council; David Depretis, member of Council; Michael Ducker, member of Council; Michael E. Fetsko, Jr., member of Council; John Ferris, Jr., member of Council; Francis Scott, member of Council; Christopher T. Kelly, an individual and in his official capacity as Chief of Police of Baldwin Police Department.

Nicholas Fera, Jr., Pittsburgh, PA, pro se.

BEFORE: SMITH, FISHER and STAPLETON, Circuit Judges.

*OPINION OF THE COURT*

STAPLETON, Circuit Judge:

Nicholas Fera appeals from the District Court's orders (1) granting summary judgment in this 42 U.S.C. § 1983 action in favor of the Borough of Baldwin, Baldwin Chief of Police Christopher Kelly, and Baldwin Council members John Conley, David Depretis, Michael Ducker, Michael Fetsko, Jr., John Ferris, Jr., and Francis Scott, and (2) denying Fera's motion for reconsideration. We will affirm the judgment of the District Court.

I.

In November 2001, Appellant Nicholas Fera was elected to the Baldwin Borough Council ("the Council") in Pittsburgh. In October 2004, the Council and a few other Borough officials held a budget workshop, during which they discussed, inter alia, unlicensed gaming devices. One of the Council's members noted that his barber told him that Edward Albert, the owner of a local establishment called the "Haf Mart," owned seven gaming devices but had licenses for only four of these devices. Although the Council discussed the possibility of investigating all proprietors who owned gaming devices, it does not appear that the Council made any firm decisions at the workshop.

The day after the workshop, Fera went to the Haf Mart, purportedly to buy a lottery ticket. While he waited in line, he saw Albert and motioned him to the rear of the store. When the two of them gathered at the rear of the store, Fera whispered to Albert that he should get the additional licenses for his gaming machines. According to Fera, he did not tell Albert to hide the unlicensed gaming machines or warn Albert that the police might be investigating him.

The next day, Baldwin Chief of Police Christopher Kelly called Fera and asked him to come to the police station. When Fera arrived at the station, Chief Kelly explained that a Haf Mart employee had reported that Fera had told Albert to hide the unlicensed gaming devices. Chief Kelly noted that Fera might be subject to

criminal liability for hindering an investigation, and that there could be negative publicity against Fera and his family. Chief Kelly then either told or advised Fera to resign from the Council. After Fera refused, Chief Kelly asked him if he wanted to call anyone to discuss the matter. Fera asked Chief Kelly to call Sam McPherson, a former mayor of Baldwin Borough. At the end of the phone call, McPherson advised Fera to resign.

After the phone call, Chief Kelly allegedly told Fera that he had ten minutes to make a decision and that, if he decided not to resign, Chief Kelly would have to prepare a police report. Fera then agreed to resign. Chief Kelly volunteered to type the resignation letter and asked Fera how he wanted the letter to read. Fera replied that he did not care what it said, so Chief Kelly composed a letter stating that Fera was resigning due to "an unexpected family emergency." Fera signed the letter upon its completion. Although Chief Kelly did ultimately prepare a police report about the incident, no criminal charges were ever brought against Fera.

At some point thereafter, Gale Dobson Miscush, the Borough's Tax Collector, allegedly disseminated a series of "letters" to the public that portrayed Fera in a negative light by alluding to, inter alia, the incident at the Haf Mart. It appears that Fera tendered only one of these "letters" to the District Court. That document, titled "The Truth & Nothing But the Truth," was published in the "Taxpayer Gazette" shortly before a local election.[1] This document stated in pertinent part:

> Did you know the reason former Councilman Nick Fera resigned from council was because he had taken information from an executive council meeting & told a local business owner that he was under

investigation. He hindered a police investigation, a criminal act, and violated the state ethics laws. Police reports are public information. His resignation & police report were filed on 10/27/04.

In October 2006, Fera commenced the instant action in the Allegheny County Court of Common Pleas against Baldwin Borough, the Baldwin Borough Police Department, Chief Kelly, and Council members John Conley, David Depretis, Michael Ducker, Michael Fetsko, Jr., John Ferris, Jr., and Francis Scott. In January 2007, Defendants removed the case to the Western District of Pennsylvania. A few weeks later, Fera filed an amended complaint, naming all of the original defendants except the Baldwin Police Department. The amended complaint raised the following claims: (1) the defendants unlawfully seized Fera at the police station and violated his due process and equal protection rights; (2) the defendants engaged in a civil conspiracy in an attempt to force Fera to resign from the Council; (3) the published material was defamatory and had been provided to the author by the defendants; and (4) Fera was entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

After the close of discovery, the defendants moved for summary judgment. In September 2007, the District Court granted these motions as to all of Fera's claims. In doing so, the court concluded that

> [c]onspicuously absent from [Fera's] statement of facts are any averments, let alone references to evidence of record, of the manner in which any defendant somehow disseminated any information to the citizen who defamed Plaintiff in a series of public letters, any proof of any conspiracy or agreement to

---

1. Fera was running in that election in an attempt to win back his seat on the Council.

He ultimately lost the election.

support his conclusory allegations of conspiracy and agreement to force him to resign, or that he was at any time restrained or detained or otherwise had his freedom of movement curtailed by Chief Kelly.

(Sept. 20, 2007, Memorandum Opinion at 9, 2007 WL 2769698.) Fera subsequently moved the court to alter or amend that judgment. The court denied the motion with respect to Fera's federal claims, concluding that the motion "simply rehashes the arguments he previously made in opposition to summary judgment...." (Oct. 18, 2007, Memorandum Order at 3, 2007 WL 3053263.) The court granted the motion, however, as to Fera's state law defamation claim, stating that it "agree[d] with Plaintiff and deems it a more appropriate exercise of discretion to follow its usual practice and decline to exercise its discretion to entertain the common law defamation claim pursuant to its supplemental jurisdiction...." (*Id.* at 4.) Accordingly, the court remanded the defamation claim to the Allegheny County Court of Common Pleas.

Fera initially pursued this appeal without representation. In February 2008, he filed a pro se informal brief. Fera subsequently retained Arnold Y. Steinberg, Esquire, who filed a reply brief on Fera's behalf in May 2008. Fera's opening brief argues (1) that the District Court "did not have all of the facts," and that he "was not represented right" by counsel in the District Court proceeding; (2) that the defendants did not attend two court-scheduled settlement conferences; and (3) that the District Court did not give him enough time to conduct discovery.

Fera presents two additional arguments in his reply brief. Although somewhat difficult to discern, it appears that his first argument is that the District Court erred in granting summary judgment as to Fera's due process claim because he suffi-

ciently demonstrated an injury to his reputation. The second argument is that the District Court erred in granting summary judgment as to his Fourth Amendment claim because, contrary to its conclusion, his encounter with Chief Kelly constituted an unlawful seizure.

## II.

■ The preliminary task in this appeal is determining which issues are before this Court. An appellant is "required to set forth the issues raised on appeal and to present an argument in support of those issues in [his] opening brief." *Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993); *see* Fed. R.App. P. 28(a)(5), (9). Although "[i]t is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal," *United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005), this Court has not held in a precedential opinion that this rule applies with equal force to pro se litigants. Other Courts of Appeals, however, have concluded that a pro se litigant's failure to raise an issue in his opening brief constitutes a waiver of that issue in the absence of exceptional circumstances. *See Timson v. Sampson,* 518 F.3d 870, 874 (11th Cir.2008) (per curiam) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned. Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief." (internal citations omitted)); *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001) ("Rule 28 applies equally to pro se litigants, and when a pro se litigant fails to comply with that rule, we cannot fill the void by crafting arguments and performing the necessary legal research...."); *Al–Ra'Id v. Ingle,* 69 F.3d 28, 31 (5th Cir.1995) ("An appellant's brief must contain an argument on the issues that are raised.... There is no exemption

for pro se litigants, though we construe their briefs liberally.").

We agree with these courts that in fairness to the opposing side it is not asking too much of pro se litigants to require at least an identification in the first brief of the issues they are asking the appeals court to resolve. Fera has tendered no satisfactory explanation for his failure to identify his reply brief arguments in his opening brief, and we hold that those arguments have been waived. Our ultimate conclusion would be no different, however, if we held to the contrary. Both of those arguments are without merit.

### III.

Fera's opening brief does not identify any facts that were overlooked by the District Court, let alone explain how such facts warrant a different outcome in this case. As for the defendants' alleged failure to attend the two settlement conferences, even if this allegation is true,[2] Fera does not indicate what relief he seeks or otherwise explain how defendants' failure to attend those conferences impacted the disposition of this case.

Finally, Fera's argument regarding his ability to conduct discovery is unpersuasive. This suit was originally filed in October 2006. In June 2007, Fera's original attorney successfully withdrew as counsel. On July 9, 2007, two weeks before the close of discovery, Fera's new attorney entered his appearance and filed an unopposed motion to extend the discovery deadline by thirty days. The District Court denied the motion without prejudice and held that the parties could file a renewed joint motion to extend the discovery period so long as the proposed discovery deadline did not affect the August 17, 2007, deadline for filing summary judgment motions.

Although Fera never renewed his discovery motion, he now seems to claim that the District Court did not give him enough time to conduct discovery. He does not indicate, however, what additional discovery he intended to conduct or how that discovery might have affected the disposition of his claims. Moreover, a review of the District Court docket provides no indication that the parties had insufficient time to undertake discovery or otherwise prepare for summary judgment.[3] Accordingly, the District Court did not abuse its discretion in overseeing the discovery in this case.

### IV.

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). A plaintiff satisfies the stigma prong of this test by showing that the allegedly stigmatizing statements were made publicly and were false. *Id.*

 Fera cannot satisfy the stigma prong, for he fails to demonstrate that any of the Appellees made the public state-

---

**2.** A review of the docket suggests that both conferences took place, and there is no indication that Appellees' counsel were not present. Although it appears that Chief Kelly himself did not attend either conference, he obtained permission from the court to be excused from attending (the court required Chief Kelly to "be available" by telephone during the second settlement conference).

**3.** Fera's notice of appeal cryptically alleges that his attorney told him that they could not "use" Chief Kelly's deposition or the police report because those materials were "beyond discoveries." To the extent Fera is attempting to argue that the District Court prevented him from using certain material obtained through discovery in his opposition to Appellees' summary judgment motions, such a claim is baseless.

ments of which he complains. Although he contends that the Borough's Tax Collector, who is not a party to this suit, authored those statements, he fails to establish that any of the Appellees facilitated the statements' publication. Moreover, that the Borough's Tax Collector may have published these statements does not render the Borough susceptible to liability here, for Fera has not shown that the allegedly stigmatizing statements reflected the Borough's policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (concluding that a municipality's liability under 42 U.S.C. § 1983 for the acts or omissions of its employees or agents is limited to circumstances where the execution of the municipality's custom or policy caused the constitutional violation). Accordingly, Fera's first reply brief argument lacks merit.

■ Turning to Fera's second reply brief argument, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). There is no seizure if "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

The District Court correctly concluded that Fera's meeting with Chief Kelly did not constitute a seizure. Fera reported to the police station voluntarily, and it does not appear that, after Fera arrived at the station, the meeting evolved into a seizure. Fera does not allege that Chief Kelly physically restrained him, flashed his weapon or made a similar show of authority, or even raised his voice during the meeting. Granted, Fera does allege that Chief Kelly gave him an ultimatum—resign or be named in a police report. Yet this ultimatum, though asking Fera to make a difficult decision, did not restrict his freedom of movement or otherwise prevent him from ending the meeting. Fera does not allege that Chief Kelly, either in words or actions, barred him from leaving the station until he decided whether to resign. Indeed, there is no indication that Fera could not have simply left the police station without responding to the ultimatum. In light of all of the circumstances surrounding this meeting, it seems that a reasonable person in Fera's position would have felt free to end the encounter.

V.

The judgment of the District Court will be affirmed.