**NOT PRECEDENTIAL**

UNITED  STATES  COURT  OF  APPEALS
FOR  THE  THIRD  CIRCUIT
_____

No. 14-4811
_____

WAYNE  MCNEILL,
Appellant

v.

GREYHOUND  LINES,  INC.
_____

On  Appeal  from  the  United  States  District  Court
for  the  Eastern  District  of  Pennsylvania
(D.C.  Civil  Action  No. 2-13-cv-01947)
District Judge:  Honorable  Anita  B. Brody
_____

Submitted  Pursuant  to  Third  Circuit  LAR  34.1(a)
October 5, 2015
Before:  CHAGARES,  JORDAN  and  NYGAARD,  <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 5, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This  disposition  is  not  an  opinion  of  the  full  Court  and  pursuant  to  I.O.P.  5.7  does  not constitute  binding  precedent.

Wayne McNeill, pro se, appeals from an order of the District Court granting Greyhound Lines, Inc.'s motion for summary judgment. For the following reasons, we will affirm.

McNeill, an African American man who has worn his hair in dreadlocks since 2007, was a Philadelphia-based driver for Greyhound from 1998 until his termination in 2013. Greyhound's employee grooming policy requires that men's hair be styled so that it does not "stick out over [the] shirt collar." Under Greyhound's "personal conduct/courtesy" policy, drivers must "be pleasant and courteous in dealing with passengers . . . and fellow employees" and refer disputes to a supervisor for resolution so as to avoid arguments. Under Greyhound "Work Rules," an employee may be discharged for "[d]iscourtesy to any customer."

Once he started wearing dreadlocks, McNeill sometimes tied them back in a ponytail hanging down his back while at work. Supervisors would tell him to "tie it up, cover it up. Do something with it." Greyhound Northeast Regional Vice President Michael Fleischhauer noticed that McNeill wore his hair hanging down his back in violation of the grooming policy and, according to McNeill, would warn him about the violation every time they spoke.

In February 2011, Greyhound Pool Manager Mark Black conducted a "road check" on McNeill, who was driving the Philadelphia-Scranton route. After driving to Scranton, Black observed, McNeill deviated from his route by driving to a Walmart near Mt. Pocono for two hours with a female Greyhound driver from New York as a

2

companion. Black cited McNeill for the deviation and for violating the uniform policy—including for wearing his braided hair "over his jacket collar to his shoulder blades"—and he was suspended without pay for three days in March 2011. In May 2011, McNeill filed a complaint with Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Rights Commission ("PHRC"), alleging that Greyhound supervisors were discriminating against him based on gender and race.

On November 3, 2011, Philadelphia Operation Manager Reginald James and District Manager Evan Burak saw McNeill in the Philadelphia terminal. McNeill said his hair was tied up at the time but a few strands might have fallen out. Burak approached him and asked if he was "taking care of that problem," and McNeill asked in reply, "What problem?" Based on that incident, James suspended McNeill without pay for three days for violating the grooming policy. McNeill filed another EEOC and PHRC complaint alleging race and gender discrimination on November 14, 2011.

On December 22, 2012, a Greyhound dispatcher in Texas sent McNeill out to rescue a bus en route to New York that broke down in Sugarloaf, Pennsylvania. She directed McNeill to, once there, wait with the disabled bus for the tow truck to arrive while the other driver, Dana Hawkins, drove her passengers on to New York in McNeill's bus. Once he arrived, Hawkins told him to drive to New York because she was too tired to, although McNeill knew she still had driving hours left on her schedule. They called the dispatcher on Hawkins' cell phone for clarification, and got into a disagreement on the nearly empty broken down bus over who should drive. The dispatcher transferred the

call to a Greyhound manager in Texas, Michael Massinburg, who told McNeill to drive. James then called McNeill on his cell phone and asked him to "be the bigger person" and drive the passengers to New York. McNeill agreed, returned to his bus, which all but one of the passengers—who had arranged to be picked up in Sugarloaf—had boarded, and left without saying anything else to Hawkins or the lingering passenger.

James undertook an investigation of the Sugarloaf incident and solicited statements from Hawkins and McNeill. Hawkins alleged that McNeill cursed, called her lazy, demonstrated enough anger to cause the passenger to comment, threw her phone after the call with Massinburg ended, ignored the passenger's question to him, and drove off, leaving them behind. James reviewed McNeill's disciplinary record and discussed firing him with City Manager Roderick Gibson and Human Relations Manager Gerrod Norman. On January 3, 2013, Greyhound terminated McNeill for violating the "personal conduct/courtesy" driver rule at Sugarloaf coupled with his prior disciplinary record.

McNeill sued Greyhound under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), 3(a), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955, alleging that Greyhound—specifically, Fleischhauer and Burak—engaged in (1) racial and gender discrimination on account of his ethnic and cultural hairstyle and (2) retaliation for his filing discrimination complaints with the EEOC and PHRC. He advanced disparate treatment and disparate impact theories. On November 5, 2013, the District Court dismissed his disparate impact claims. On November 25, 2014,

4

the District Court entered summary judgment in Greyhound's favor, dismissing McNeill's disparate treatment claims. McNeill timely appealed.

We have jurisdiction under 28 U.S.C. § 1291. McNeill does not challenge the District Court's dismissal of his disparate impact claims, only its entry of summary judgment against his disparate treatment claims.[1] We review de novo an order granting summary judgment. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive summary judgment, there must be sufficient evidence to support a reasonable jury returning a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We view the evidence in favor of the nonmoving party and give him the benefit of all reasonable inferences. Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (citation omitted).

At the threshold, Greyhound argues that McNeill's appeal should be denied because he filed a disorganized and indecipherable brief that fails to develop any issues or cite authority and lacks an appendix. Because McNeill is proceeding pro se on appeal, we liberally construe his filings and hold them to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). Even pro se litigants' briefs must present and

---

[1] We do not distinguish between McNeill's Title VII and PHRA claims because the same standards govern each. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999).

argue issues, however, so that we may know what district court action they dispute. See Fed. R. App. P. 28(a)(5)–(8); Al–Ra'id v. Ingle, 69 F.3d 28, 31 (5th Cir. 1995).

McNeill asserts that the District Court incorrectly decided the facts and erroneously applied the law without explaining how it did either. The only issues McNeill even minimally develops concern his claims that Greyhound "submitted numerous false statements" and, during depositions, its counsel "coached witnesses, raised repeated speaking objections, and interrupted [Greyhound's] own witnesses before they could reveal damaging information." He does not explain, however, what statements were false or support his assertions with evidence.[2] He also claims that Greyhound witnesses heard each other's testimony. McNeill was represented by counsel during the depositions. His attorney had the opportunity to object to any inappropriate behavior, to cross-examine witnesses on any testimony that Greyhound sought to obscure, or to move for a witness-sequestration order pursuant to Fed. R. Civ. P. 26(c)(1). Finally, McNeill failed to address most of these issues on summary judgment before the District Court. See Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.")

---

[2] While McNeill disputes Greyhound's and Hawkins' claim that McNeill improperly left behind on the broken-down bus the passenger who was undisputedly awaiting a separate ride from Sugarloaf, the mere fact that he disagrees with their characterization of the incident does not mean that Greyhound's or Hawkins' statements were knowingly false.

McNeill also argues that the District Court should have ignored Greyhound's statement of facts entirely, as the district judge's briefing procedure left him no opportunity to dispute them. This argument is meritless. The District Court's scheduling order directed parties to adhere to a "traditional" summary judgment procedure and submit statements of facts along with the motion and response. McNeill could have disputed Greyhound's factual assertions in his response; indeed, his statement of facts at times relies entirely on certain claims in Greyhound's statement. Greyhound understood and seized its opportunity to dispute McNeill's facts in its reply. The District Court properly deemed undisputed any of Greyhound's facts that did not contradict those presented by McNeill. See Fed. R. Civ. P. 56(e)(2).

McNeill fails to specifically challenge any other action by the District Court. His generalized assertions of legal and factual error are unhelpful and insufficient to raise issues for our review. See Al–Ra'id, 69 F.3d at 31. Similarly, the seemingly haphazard attachments to McNeill's brief—to the extent we can decipher them and infer their import—present either irrelevant material or excerpts of argument submitted to the District Court prior to summary judgment. By and large, these documents do not indicate how the District Court's ensuing decision is allegedly reversible. See id.[3]

---

[3] The final page of McNeill's submission is blurred and portions of the text are cut off. In pertinent part, McNeill appears to claim that Greyhound provided evidence of his disciplinary history that actually related to another driver or is otherwise factually disputed. However, the disputed records, accurate or not, were only briefly mentioned by the District Court and not dispositive in its analysis. Further, whether or not Greyhound's

Moreover, we have reviewed the record and the parties' arguments before the District Court and cannot find any meritorious argument that McNeill could have raised on appeal. McNeill made an insufficient showing that Greyhound's proffered reason for terminating him—his disciplinary history culminating in conduct that violated the personal conduct/courtesy policy during the Sugarloaf incident—was a pretext for racial or gender discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Smith v. Borough of Wilkinsburg, 147 F.3d 272, 278 (3d Cir. 1998). Nor was there evidence causally connecting his termination to the EEOC and PHRC complaints he filed more than a year earlier. See Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir. 2007). Because there was insufficient evidence to support McNeill's racial and gender discrimination and retaliation claims, the District Court properly entered summary judgment in Greyhound's favor. See Anderson, 477 U.S. at 248.

For the foregoing reasons, we will affirm the judgment of the District Court. McNeill's motion requesting that we reconsider granting Greyhound leave to file a supplemental appendix is denied.

---

reactions thereto were fair, McNeill was undeniably involved in other disciplinary incidents along with the crucial Sugarloaf episode, providing Greyhound with a legitimate reason for terminating him. See Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (noting that question is not the wisdom of the employer's decision but whether it was due to discrimination).